UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

MAXCHIEF INVESTMENTS LIMITED, )
)
Plaintiff, )
)
v. ) No. 3:16-cv-63
)
PLASTIC DEVELOPMENT GROUP, LLC, )
)
Defendant. )

## MEMORANDUM OPINION

This matter is before the Court on Defendant's Motion to Transfer [doc. 17], Defendant's Brief in Support of the Motion [doc. 18], and Plaintiff's Response in Opposition to the Motion [doc. 21]. For the reasons herein, the Court will deny the motion.

## I. BACKGROUND

Headquartered in Southfield, Michigan, which is within the Eastern District of Michigan, [Guck Decl., doc. 19, ¶¶ 1, 4; Ballentine Decl., doc. 26, ¶ 4], Defendant Plastic Development Group, LLC ("Plastic Development") describes itself as "a leading manufacturer and distributor of blow-molded and injection-molded plastic products, including banquet tables," [Guck Decl. ¶ 3]. Plaintiff Maxchief Investments Limited ("Maxchief"), which is based in Hong Kong, claims that Plastic Development's bi-fold tables are infringing its rights under United States Patent No. 6,622,644 ("the '644 Patent"), entitled "Collapsible Table." [Compl., doc. 1, ¶¶ 4, 7, 9; '644 Patent, doc. 1-1, at 2]. As a result, it has brought this action under 35 U.S.C. § 271(a)–(c), (f). [Compl. ¶¶ 7–18]. Plastic

Development now requests that this Court transfer this case to the Eastern District of Michigan under 28 U.S.C. § 1404(a). [Mot. to Transfer at 2].

## II. SECTION 1404(a)

Venue is the "geographic specification of the proper court or courts for the litigation of a civil action that is within the subject-matter jurisdiction of the district courts in general." 28 U.S.C. § 1390(a). "Change of venue in patent cases, like other civil cases, is governed by 28 U.S.C. § 1404(a)." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Section 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Section 1404(a)'s purpose is to protect litigants, witnesses, and the public from unnecessary expense and inconvenience. *Inghram v. Univ. Indus. Gases, Inc.*, No. 1:05-CV-19, 2006 WL 306650, at *4 (E.D. Tenn. Feb. 8, 2006) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

A district court's "first concern" when considering a motion to transfer under § 1404(a) is "whether the action 'might have been brought,' in the first instance in the transferee district." *Weltmann v. Fletcher*, 431 F. Supp. 448, 450 (N.D. Ohio 1976) (footnote omitted) (citing *Cont'l Grain Co. v. FBL-585*, 364 U.S. 19, 22 (1960)); *see One StockDuq Holdings, LLC v. Becton, Dickinson & Co.*, 2013 WL 1136726, No. 2:12-cv-03037-JPM-tmp, at *2 (W.D. Tenn. Mar. 18, 2013) ("In determining whether to transfer a case under § 1404(a), a court must first find that the civil action could have been brought in the requested transferee district." (citing *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th

2

Cir. 2009))). If a court determines that an action might have been brought in the transferee district, the issue then "becomes whether transfer is justified under the balance of the language of Section 1404(a)." *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 945 (S.D. Ohio 2002); *see McKee Foods Kingman v. Kellogg Co.*, 474 F. Supp. 2d 934, 936 (E.D. Tenn. 2006) ("First, a defendant must identify an alternate forum in which venue is proper. Next, the defendant must show that the convenience of the parties and witnesses, and the interest of justice, warrant transfer." (citations omitted)).

Under § 1404(a), a district court has broad discretion to grant or deny a motion to transfer a case, *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994), "according to an 'individualized, case-by-case consideration of convenience and fairness,'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quotation omitted). Although the federal courts do not have a "definitive formula" or "comprehensive list of factors" that they employ when making this case-by-case consideration of convenience and fairness, *Inghram*, 2006 WL 306650 at *5, they do consider various private and public interests, *see Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991), which include:

> (1) convenience of witnesses; (2) availability of judicial process to compel the attendance of unwilling or uncooperative witnesses; (3) location of the relevant documents or records, and the relative ease of access to sources of proof; (4) residence and convenience of the parties; (5) relative financial means of the parties; (6) locus of the operative facts and events that gave rise to the dispute or lawsuit; (7) each forum's familiarity with the governing law; (8) the deference and weight accorded to the plaintiff's choice of forum; and (9) trial efficiency, fairness, and the interests of justice based on the totality of the circumstances.

*Ingraham*, 2006 WL 306659 at *5 (citing *Stewart Org.*, 487 U.S. at 29–30); *see Reese*, 574 F.3d at 320. This list of factors is not exhaustive,[1] and the Court may consider "all relevant factors that may make the litigation easy, less expensive, and expeditious." *Dorsey v. Hartford Life & Accident Ins. Co.*, No. 1:08-cv-243, 2009 WL 703384, at *3 (E.D. Tenn. Mar. 16, 2009). "If the court determines that the 'balance between the plaintiff's choice of forum and defendant's desired forum is even, the plaintiff's choice of [forum] should prevail.'" *Malibu Boats, LLC v. Nautique Boat Co.*, No. 3:13-CV-656-TAV-HBG, 2014 WL 202379, at *4 (E.D. Tenn. Jan. 16, 2014) (quotation omitted)).

## A. Might Have Been Brought

An action "might have been brought" in the transferee district if (1) the court in that district has subject matter jurisdiction; (2) the defendant is amenable to service of process from that court; and (3) venue is proper there. *McLouth Steel Corp. v. Jewell Coal & Coke Co.*, 432 F. Supp. 10, 11 (E.D. Tenn. 1976). First, because this action arises under a federal statute, 35 U.S.C. § 271(a)–(c), (f), the district court in the Eastern District of Michigan has subject matter jurisdiction over it. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of

---

[1] These factors are an amalgamation of the public and private interests that underlie the doctrine of *forum non conveniens*. *See Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*,134 S. Ct. 568, 580 (2013) ("Section 1404(a) is merely a codification of the doctrine of *forum non conveniens*" and "both § 1404(a) and the *forum non conveniens doctrine* . . . entail the same balancing-of-interests standard" (citations omitted)); *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984) (describing the "relevant public interest factors" and "private interest considerations" that comprise an analysis under the doctrine of *forum non convenience* (citations omitted)).

the United States."). Second, based on Plastic Development's contention that venue is proper in the Eastern District of Michigan, [Def.'s Br. at 5; *see* Answer, doc. 16, at 9], Plastic Development concedes that it would be amenable to process in that district.

The third element—the propriety of venue in the Eastern District of Michigan—necessitates a more in-depth analysis by the Court. Plastic Development argues that venue is proper in the Eastern District of Michigan because it is headquartered there. [Def.'s Br. at 5; *see* Ballentine Decl. ¶ 4]. Under 28 U.S.C. § 1400(b), a provision that governs venue for patent-infringement actions, venue is proper in the district where the defendant "resides." Under 28 U.S.C. § 1391(c)(2), a general venue provision, a defendant that is a limited liability company, like Plastic Development, resides "in any judicial district in which [it] is subject to the court's personal jurisdiction with respect to the civil action in question," in general civil actions *and* patent-infringement actions. *See VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1575, 1580 (Fed. Cir. 1990) (holding that § 1391(c) defines the term "resides" in § 1400(b)); *Century Wrecker Corp. v. Vulcan Equip. Co.*, 733 F. Supp. 1170, 1173 (E.D. Tenn. 1989) (concluding that "Congress intended that § 1391(c) be applied to each and every venue provision found in Chapter 87" and that "§ 1400(b) must be construed in combination with § 1391(c)"); *see also Ingram Barge Co. v. Ams. Styrenics, LLC*, No. 3:15-cv-0507, 2015 WL 5228154, at *5 (M.D. Tenn. Sept. 8, 2015) (relying on § 1391(c)(2) to determine the residence of a limited liability company); *D&L Distrib., LLC v. Agxplore Int'l, LLC*, 959 F. Supp. 2d 757, 762 & n.3 (E.D. Pa. 2013) (noting that "[f]or entities, such as limited liability companies . . . venue is

proper 'in any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to the civil action in question" (quoting§ 1391(c)(2))).

For venue to be proper in the Eastern District of Michigan, Plastic Development must therefore be subject to personal jurisdiction in that district. Personal jurisdiction is "[a] court's power to exercise control over the parties." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979). The federal courts "ordinarily follow state law in determining the bounds of their jurisdiction over [the parties]," *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014) (citation omitted), including parties that are corporations or similar entities, *see Pennoyer v. Neff*, 95 U.S. 714, 735 (1877) ("[A] State, on creating corporations or other institutions . . . may provide a mode in which their conduct may be investigated, their obligations enforced, or their charters revoked, which shall require other than personal service upon their officers or members."), *overruled on other grounds by Shaffer v. Heitner*, 433 U.S. 186 (1977))).

Although Michigan has no statute that addresses personal jurisdiction over limited liability companies, it does have statutes that deal with personal jurisdiction over corporations, *see* Mich. Comp. Laws §§ 600.711, 600.715, and "the personal jurisdiction rules governing corporations generally have been applied to limited liability companies as well," *Magna Powertrain De Mexico S.A. De C.V. v. Momentive Performance Materials USA LLC*, No. 16-11249, 2016 WL 3574652, at *2 (E.D. Mich. June 16, 2016) (citation omitted). A corporation's place of incorporation and principal place of business are both "paradig[m] . . . bases for general jurisdiction." *Daimler AG*, 134 S. Ct. at 760 (quotation omitted); *see* Mich. Comp. Laws § 600.711(1) (stating that the existence of

6

"[i]ncorporation under the laws of this state" constitutes a sufficient basis for the exercise of personal jurisdiction). A corporation's principal place of business is typically the location where it maintains its headquarters, *Hertz Corp v. Friend*, 559 U.S. 77, 92–93 (2010), a precept that this Court will extend to Plastic Development as a limited liability company, *see Magna Powertrain*, 2016 WL 3574652 at *2. Because Plastic Development is headquartered in the Eastern District of Michigan, [Ballentine Decl. ¶ 4], it is subject to the District Court for the Eastern District of Michigan's personal jurisdiction, and venue is therefore proper in the Eastern District of Michigan, *see* § 1391(c)(2); *Union Guardian Tr. Co. v. Detroit Tr. Co.*, 72 F.2d 120, 121 (1934) ("The trust company is a Michigan corporation, with its principal place of business in the Eastern District of Michigan, and therefore a resident of that district." (citation omitted)). Satisfied that this action might have been brought in the transferee district, the Court will now proceed to the second leg of the analysis: convenience and the interest of justice.

## B. Convenience

Simply, one of the parties is likely to be inconvenienced to some extent by having to litigate in either the Eastern District of Tennessee or the Eastern District of Michigan, and the Court has to determine which of these venues is most appropriate by balancing the inconveniences that litigation in either district will pose to the parties. In doing so, it must keep in mind that at the outset a plaintiff's choice of venue receives greater weight than other factors. *See Maberry v. Nuclear Fuel Servs.*, No. 3:13-CV-499, 2013 WL 5560318, at *2 (E.D. Tenn. Oct. 7, 2003) (noting that "the plaintiff's original choice of forum is

normally given 'considerable weight,' with 'the balance of convenience, considering all the relevant factors, [needing to] be strongly in favor of a transfer before such will be granted'" (quotation omitted)); *see also W. Am. Ins. Co. v. Potts*, No. 89-6091, 1990 WL 104034, at *2 (6th Cir. July 25, 1990) ("Foremost consideration must be given to the plaintiff's choice of forum."); *Weinstein v. Friedman*, 859 F. Supp. 786, 788 (E.D. Pa. 1994) ("[A] plaintiff's choice of forum is a paramount consideration which should not be lightly disturbed and thus the court should hold defendants to establishing a strong preponderance in favor of transfer." (citations omitted)). Unless a defendant shows by a preponderance of the evidence that convenience and the interest of justice "strongly favor" transfer, a plaintiff's choice of forum is generally decisive. *Inghram*, 2006 WL 306650 at *4 (quotations omitted); *see Hoffman v. Blaski*, 363 U.S. 335, 366 (1960) ("[T]he defendant must satisfy a very substantial burden of demonstrating where 'justice' and 'convenience' lie, in order to have his objection to a forum of hardship . . . respected."); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) ("[U]nless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail." (citation omitted)); *cf. Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984).

### 1. Maxchief's Choice of Forum

Plastic Development argues that Maxchief's choice of forum in the Eastern District of Tennessee is entitled to less deference because Maxchief is a foreign entity with its principal place of business in Hong Kong. [Def.'s Br. at 5, 8–9; *see* Compl. ¶ 4]. Maxchief

responds by explaining its rationale for filing this case in the Eastern District of Tennessee, pointing out that its "decision was based at least in part on the location of material non-party fact witnesses" and "a longstanding relationship" with its attorneys who are located in Knoxville, Tennessee. [Pl.'s Resp. at 12]. Maxchief then goes on to recite the principle that a plaintiff's forum is entitled to substantial weight. [*Id.*].

The question of whether Maxchief's choice of forum is entitled to the typical heft that accompanies a plaintiff's choice of forum, however, depends on whether this venue—the Eastern District of Tennessee—is Maxchief's home forum. *See In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011) (observing that "[w]hen a plaintiff brings its charges in a venue that is not its home forum . . . that choice of forum is entitled to less deference" under § 1404(a) (citations omitted)); *Maberry*, 2013 WL 5560318 at *4 (noting that under § 1404(a) "courts have indicated that a plaintiff's choice [of forum] is less important when the plaintiff does not reside in the forum" (citation omitted)); *cf. Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (recognizing that when a plaintiff brings a suit outside of its home forum, the presumption in favor of its choice of forum "applies with less force" (quotation omitted)); *Dowling*, 727 F.2d at 613–14 (noting that "foreign plaintiffs are not entitled to the same presumption in favor of their chosen forum" and that "a foreign plaintiff's choice deserves less deference" (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981))).

Maxchief's contention that it selected this venue because of the location of the non-party witnesses—an independent factor that pertains to the convenience of the witnesses themselves rather than to the sanctity of Maxchief's choice of forum—is therefore

9

inconsequential to whether its choice of forum is entitled to traditional deference. As to Maxchief's attorneys, Maxchief does not state why their whereabouts in this forum should permit venue to endure here. Some courts have in fact held that "[t]he factor of 'location of counsel' is irrelevant and improper for consideration in determining the question of transfer of venue." *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003); *see Solomon v. Cont'l Am. Life Ins. Co.*, 472 F.2d 1043, 1047 (3d Cir. 1973); *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*, 119 F. Supp. 2d 433, 438 (S.D.N.Y. 2000). To the extent that Maxchief is proposing that the Court should consider its counsel's location as a factor that comes within the ambits of fairness, Maxchief does not explain why it should receive this charitable treatment over Plastic Development, whose counsel is in Michigan. Simply, because Maxchief is a foreign entity—which is registered in the British Virgin Islands and based in Asia, [Compl. ¶ 4]—it is not at home in this venue and its choice of forum is not imbued with the traditional deference tied to a plaintiff's choice of forum. The Court therefore will not treat Maxchief's choice of forum in this district with fidelity; instead, it will permit it to "give way" if the balance of the remaining factors strongly favor transfer by a preponderance of the evidence. *Maberry*, 2013 WL 5560318 at *4.

### 2. The Convenience of the Witnesses

The convenience of the witnesses is "often considered to be the most important factor when determining which forum is the most convenient." *KANL, LLC v. Savage Sports Corp.*, No. 3:13-CV-265-TAV-CCS, 2014 WL 1745443, at *3 (E.D. Tenn. Apr. 30, 2014) (quotation omitted); *see In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009)

(acknowledging the convenience of witnesses as "probably the single most important factor in transfer analysis" (quotation omitted)); *see also* § 1404(a) (mentioning specifically "the convenience of parties and witnesses"). Under § 1404(a)'s multi-factored analysis, no rigid or catch-all definition of "convenience" exists; again, the analysis is a flexible one, conferring broad discretion on district courts to accommodate the varying circumstances that may distinguish one case from another. *Cf. Piper Aircraft*, 454 U.S. at 249–50 ("[W]e stated that we would not lay down a rigid rule to govern discretion, and that '[e]ach case turns on its facts.' If the central emphasis were placed on any one factor, the [inquiry of convenience] would lose much of the very flexibility that makes it so valuable." (quoting *Williams v. Green Bay & W. R.R. Co.*, 326 U.S. 549, 557 (1946))). The convenience of the witnesses, however, should not become a "battle of numbers," that is, a head count based on the number of witnesses that the parties are able to identify in their respective camps. *LaCroix v. Am. Horse Show Ass'n*, 853 F. Supp. 992, 1001 (N.D. Ohio 1994) (quotation omitted).

Rather, a court's focus—and the movant's—under this factor should be on "the relevance and the materiality of the information" that the key witnesses will provide in the litigation. *Genentech*, 566 F.3d at 1343 (citation omitted); *see Smith v. Kyphon, Inc.*, 578 F. Supp. 2d 954, 963 (M.D. Tenn. 2008) ("[T]he party seeking the transfer must clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover" (citation omitted)); *Thomas v. Home Depot, U.S.A., Inc.*, 131 F. Supp. 2d 934, 937 (E.D. Mich. 2001) (recommending that "the parties should provide each witness's name and outline of what material testimony that witness would provide"

11

(citations omitted)). The residence of each key witness is also important. *Kendle v. Whig Enters., LLC*, No. 2:15-cv-1295, 2016 WL 354876, at \*7 (S.D. Ohio Jan. 29, 2016); *Thomas*, 131 F. Supp. 2d at 937. On the whole, the party requesting transfer must show that the witnesses will be "severely inconvenienced" if the litigation proceeds in the plaintiff's chosen forum. *Malibu Boats*, 2014 WL 202379 at \*5 (quotation omitted); *KANL*, 2014 WL 1745443 at \*3 (quotation omitted).

i. Relevance and Materiality

The relevance and materiality of the witnesses are a function of the specific claims in a case, and in this case, the allegations involve patent infringement. *See Genentech*, 566 F.3d at 1344 (concluding that the movants were entitled to transfer partly because they had identified witnesses relevant to the "issues at trial"). An infringement analysis consists of two steps. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). The initial step involves the construction of essentially a definition of the patent claim, namely its meaning and scope. *Id.* The next step is a comparison between the patent claim, as properly defined, and the device that is responsible for the alleged infringement. *Id.*

Plastic Development identifies four relevant witnesses who will provide testimony that may be material to this two-tiered infringement analysis, all of whom are located in the Eastern District of Michigan:

- <u>Mr. Craig Guck, Chief Executive Officer of Plastic Development</u>: "I am under the belief that I will be a material witness at trial to testify in regards to [Plastic Development's] inception, and the marketing efforts, design, development, sales and volumes, purchase orders, supply agreements, patent license agreements, and communications regarding the accused bi-fold tables." [Guck Decl. ¶ 5].

12

- Mr. Richard Ballentine, Co-Founder and General Counsel of Plastic Development: "I will be a material witness at trial to testify in regards to [Plastic Development's] inception, and the marketing efforts, design, development, sales and volumes, purchase orders, supply agreements, patent license agreements, and communications regarding the accused bi-fold tables." [Ballentine Decl. ¶ 5].

- Mr. Terry Guck, Co-Founder and President of Plastic Development: "Mr. Guck would be a material witness at trial to testify at least in regards to [Plastic Development's] acquisition of the Target business and sales of the accused bi-fold tables." [Guck. Decl. ¶¶ 12–13].

- Mr. Gene Villeneuve, Sole Owner of Design 2000: "Design 2000 assists [Plastic Development] in sales and marketing by collaborating on marketing materials, advertising, and product placement of [Plastic Development's] products, as well as creating the labels for [Plastic Development's] products. Design 2000 may be a material witness in testifying about the marketing of relevant features to potential customers, including those of the accused bi-fold tables." [*Id.* ¶ 16; *see* Ballentine Decl. ¶ 11]].

In similar fashion, Maxchief identifies a pair of relevant witnesses who will provide testimony that may be material to the two-tiered infringement analysis, each of whom is located in the Eastern District of Tennessee:

- Mr. Steven Buono, Inventor of the Collapsible Table in the '644 Patent: "Maxchief expects Mr. Buono to provide testimony concerning many relevant issues in this case, such as the conception, reduction to practice, and other matters concerning the design of the invention claimed in the '644 patent and rebuttal of claims of patent invalidity." [Ho Decl., doc. 23, ¶ 5].

- Meco Corporation, Maxchief's Customer and Seller of the Collapsible Table in the '644 Patent: "Representatives from Meco are expected to testify in this case about the sales, distribution, and success of Maxchief's patented products." [*Id.* ¶ 6].

Before addressing the parties' arguments regarding how these particular witnesses factor into the issue of convenience, the Court reiterates that the *number* of witnesses that each

13

party has initially identified—four witnesses on Plastic Development's side compared to two witnesses on Maxchief's side—does not by itself resolve the issue. *Kyphon*, 578 F. Supp. 2d at 963 (stating that "the convenience of the witnesses factor should not devolve into a contest between the parties as to which of them can present a longer list of possible witnesses located in the respective districts"). Instead, the Court must consider the relevance and materiality of these witnesses before conducting a tally. *See Oakley v. Remy Int'l, Inc.*, No. 2:09-0107, 2010 WL 503125, at *4 (M.D. Tenn. Feb. 5, 2010) (noting that the convenience of witnesses is not *solely* a head count but "includes a consideration of the importance of each witness").

Each party has satisfied the requirements of case law in this circuit by identifying relevant witnesses and describing the material testimony they will provide in this case. Even so, Plastic Development contends that the Court should allocate no weight to the witnesses that Maxchief has identified because they "ha[ve] no apparent relevance to this case" and are "unlikely . . . . [to] provide material testimony." [Def.'s Br. at 6]. Specifically, Plastic Development claims that Meco Corporation ("Meco") is not a relevant witness because it "is not accused of patent infringement" and that Mr. Buono is not a relevant witness because "inventors rarely provide relevant testimony in patent infringement cases." [*Id.*]. Plastic Development, in support of its argument, relies on *Bell & Howell Document Management Products Co. v. Altek Systems*, 132 F.3d 701 (Fed. Cir. 1997), in which the Federal Circuit stated that "testimony of an inventor . . . concerning claim construction is . . . entitled to little or no consideration. The testimony of an inventor often is a self-

serving, after-the-fact attempt to state what should have been part of his or her patent application . . . ." *Id.* at 706.

As an initial matter, the Court struggles to understand why Meco cannot be a relevant witness in this action simply because it has not been accused of patent infringement, particularly while Plastic Development maintains that Design 2000—which has also not been accused of patent infringement—is a relevant witness. Maxchief states that Meco will testify "about the sales, distribution, and success of Maxchief's patented products," [Ho Decl. ¶ 6], and this is precisely the sort of testimony that may be material to the issue of damages in a patent infringement case, *see Whitserve, LLC v. Comp. Packages, Inc.*, 694 F.3d 10, 26 & n. 11 (Fed. Cir. 2012) (noting that "[w]hen a patent is infringed, the patentee is entitled to 'damages adequate to compensate for the infringement, but in no event less than a reasonable royalty" and that a relevant factor in determining a reasonable royalty is "the established profitability of the product made under the patent, including its commercial success and current popularity"). Plastic Development provides the Court with no reason to doubt the relevance and materiality of Meco as a witness in this action. Maxchief has identified Meco as a relevant witness and has highlighted the material testimony that Meco will offer at trial. Nothing more is necessary in this circuit under § 1404(a). *See Kyphon*, 578 F. Supp. 2d at 963 (requiring identification of the relevant witnesses and a general statement of their testimony); *cf. Genentech*, 566 F.3d at 1343–44 (determining that the district court erred under § 1404(a) by overly scrutinizing the identified witnesses' testimony for relevance and materiality and employing "a higher standard than required by the law").

As to Plastic Development's contention that Mr. Buono, because of his status as an inventor, cannot be a relevant witness with material testimony, Plastic Development asks the Court to adopt an interpretation of the Federal Circuit's opinion in *Bell & Howell* that is far too broad. In *Bell & Howell*, the Federal Circuit never concluded that an inventor's testimony is always immaterial in a patent infringement case; rather, it stated that, in some instances, an inventor's testimony "concerning *claim construction* is . . . entitled to little or no consideration." 132 F.3d at 706 (emphasis added). The term "claim construction" means the "search for the ordinary and customary meaning of a claim term to a person of ordinary skill in the art," *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1362 (Fed. Cir. 2006), and it refers to the first step in the infringement analysis, *Markman*, 52 F.3d at 976.

Although Maxchief has asserted that Mr. Buono will testify about issues that appear to deal with or be related to claim construction—namely "matters concerning the design of the invention claimed in the '644 patent," [Ho Decl. ¶ 5]—this type of testimony can be material in the right context, *see Howmedica Osteonics Corp. v. Wright Med. Tech. Inc.*, 540 F.3d 1337, 1347 & n. 5 (Fed. Cir. 2008) (stating that an inventor's testimony as to "*subjective intent*" is not relevant to claim construction but that the "testimony of an inventor, of course, may be pertinent as a form of expert testimony . . . as to understanding the established meaning of particular terms in the relevant art" (emphasis added) (citation omitted)); *Bell & Howell*, 132 F.3d at 706 (recognizing that in the context of claim construction an inventor's testimony is "proper" when the intrinsic evidence—that is, the patent claim, the description of the invention, and the prosecution history—is ambiguous); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1317–18 (Fed. Cir. 2005) (acknowledging

that "[a]lthough we have emphasized the importance of intrinsic evidence in claim construction, we have also authorized district courts to rely on . . . expert and inventor testimony," which "can be useful to a court for a variety of purposes").

At least in some patent infringement cases, therefore, the testimony of an inventor is indeed material. In this case—here on a motion under § 1404(a)—the Court has no need to discern where precisely Mr. Buono's testimony, as it relates to claim construction, is likely to fall on the spectrum between material and immaterial testimony. In other words, the Court is not bound to make an exacting determination of whether Mr. Buono's testimony will be material in every respect. Maxchief has identified Mr. Buono as a relevant witness and produced a general statement of the material testimony that he will present at trial—testimony that is not always, or even predominantly, immaterial in patent infringement cases. For the purpose of § 1404(a), nothing more is necessary. *Genentech*, 566 F.3d at 1343–44; *Kyphon*, 578 F. Supp. 2d at 963.

Even if the Court were to accept the contention that Mr. Buono's proposed testimony as to claim construction is immaterial, Plastic Development does not account for the fact that Mr. Buono also plans to testify about patent invalidity, an affirmative defense that Plastic Development raises in its pleading. [Answer at 8]. An inventor's testimony as to invalidity is undoubtedly material in patent infringement cases. *See, e.g.*, *Electromotive Div. of Gen. Motors Corp. v. Transp. Sys. Div. of Gen. Elec. Co.*, 417 F.3d 1203, 1212 n.2 (Fed. Cir. 2005) ("When the accused infringer alleges invalidity . . . an inventor may introduce evidence . . . neutralizing the accused infringer's showing."); *Five Star Mfg., Inc. v. Ramp Lite Mfg., Inc.*, 4 F. App'x 922, 923 (Fed. Cir. 2001) (recognizing the important

17

role that an inventor's testimony played as to a claim of invalidity); *Malibu Boats*, 2014 WL 202379 at *5 n.2 ("[S]everal inventor[s] . . . who reside in Tennessee . . . may testify to rebut claims of invalidity . . . which weighs against transfer."). Maxchief's witnesses in the Eastern District of Tennessee are therefore relevant and material to this action.

Having addressed Plastic Development's arguments as to the relevance and materiality of the witnesses, the Court will now turn to Maxchief's arguments on this same topic. Maxchief claims that even if Plastic Development's witnesses are relevant and material to this action, all of them except Design 2000 are "employee witnesses" rather than non-party witnesses. [Pl.'s Resp. at 5]. Maxchief maintains that their convenience should be less important to the Court's analysis. [*Id.*]. In this circuit, several courts agree that if party witnesses are employees, they "will not ordinarily be considered, or at least, that the convenience of such employees will not generally be given the same consideration as is given to other witnesses." *Zimmer Enters., Inc. v. Atlandia Imports, Inc.*, 478 F. Supp. 2d 983, 991 (S.D. Ohio 2007) (citation omitted); *see FIMCO Servs., LLC v. FirstMerit Bank, N.A.*, No. 1:10-cv-72, 2010 WL 5184885, at *10 (E.D. Tenn. Dec. 15, 2010) ("Convenience of non-party witnesses, as opposed to employee witnesses, is one of the most important factors in the transfer analysis[.]" (quotation omitted)); *Steelcase, Inc. v. Smart Techs. Inc.*, 336 F. Supp. 2d 714, 721 (W.D. Mich. 2004) ("[C]onvenience of non-party witnesses, rather than employee witnesses . . . is the more important factor and is accorded greater weight." (quotation omitted)); *cf. Malibu Boats*, 2014 WL 202379 at *5 ("[C]orporations are normally able to make its employees available to testify when and where needed." (citation omitted)).

Plastic Development's three relevant employee witnesses who are located within the Eastern District of Michigan therefore cannot tilt the balance away from Maxchief's two non-party witnesses in the Eastern District of Tennessee. *Cf. Bacik v. Peek*, 888 F. Supp. 1405, 1415 (N.D. Ohio 1993) (stating that a smaller number of important witnesses may outweigh a larger number of less important witnesses); *see Thomas*, 131 F. Supp. 2d at 937 (recognizing that "[o]ne chief witness's convenience, in fact, may outweigh the convenience of other, less significant witnesses" (citation omitted)). A direct comparison of apples-to apples also does not favor transfer. Maxchief identifies two relevant non-party witnesses in its camp, while Plastic Development identifies only one relevant non-party witness in its camp. The Court's analysis of the convenience of the relevant and material witnesses therefore weighs against transfer. *See FIMCO Servs.*, 2010 WL 5184885 at *10 (stating that the court's consideration of a non-party witness "very heavily" weighed against transfer).

### ii. Disruption of Day-to-Day Operations

Plastic Development also argues that, as a "small Michigan company," it would suffer disruption in the management of its daily operations if this case were to continue in its current forum. [Def.'s Br. at 7–8]. Mr. Craig Guck and Mr. Ballentine inform the Court that litigation in Tennessee would hamper their ability as well as Mr. Villeneuve's ability to conduct day-to-day business in Michigan. [Guck Decl. ¶ 14; Ballentine Decl. ¶ 11]. "The convenience and cost of attendance for witnesses is an important factor in the transfer calculus." *In re Nintendo Co.*, 589 F.3d 1194, 1198–99 (Fed. Cir. 2009) (quoting

*Genentech*, 566 F.3d at 1343); *see In re TS Tech.*, 551 F.3d at 1320 ("It goes without saying that . . . additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." (quoting *In re Volkswagen AG*, 371 F.3d 201, 205 (5th Cir. 2004))); *see also Thomas*, 131 F. Supp. 2d at 939 ("A defendant's employee-witness who would lose wages during his time away from work . . . might very well face an undue hardship in testifying in a distant court such that a change in venue would be appropriate." (citation omitted)).

An analysis under § 1404(a), however, is not a one-sided one. Although the Court regrets any disruption in Plastic Development's business, the Court has already noted that one of the parties in this litigation will inevitably have to withstand some inconvenience. The relocation of this case to the Eastern District of Michigan would force Maxchief's non-party witnesses in the Eastern District of Tennessee to absorb the very same business-related inconveniences that Plastic Development's witnesses wish to avoid. The Court will not create an outcome under § 1404(a) that will merely shift inconvenience from one party to the other. *Van Dusen*, 376 U.S. at 645–46 ("Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient."); *McKee Foods*, 474 F. Supp. 2d at 942 ("A transfer of venue under 28 U.S.C. § 1404(a) must render litigation more convenient as a whole; it cannot merely shift inconvenience between the parties." (citing *id.*)).

Plastic Development also claims, however, that "Maxchief's witnesses would not be inconvenienced any differently by traveling from Hong Kong to Michigan, instead of to Tennessee." [Def.'s Br. at 8]. Although this argument is generally not without some

20

merit, *see Genentech*, F.3d at 1344 (stating that "[t]he witnesses from Europe will be required to travel a significant distance no matter where they testify"); *Cento Grp., S.p.A. v. OroAmerica, Inc.*, 822 F. Supp. 1058, 1061–62 (S.D.N.Y. 1993) (determining that the plaintiff's witnesses would suffer mild inconvenience by traveling from Italy to California instead of from Italy to New York); *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 474, 484 (D.N.J. 1993) (opining that the plaintiff's witnesses from Japan would endure minimal inconvenience by having to travel to Minnesota instead of New Jersey), in this particular instance it is single-minded, preserving only the convenience of Plastic Development's relevant witnesses in Michigan. Plastic Development overlooks the fact Maxchief's relevant non-party witnesses—who, again, are entitled to significant consideration from this Court and who outnumber Plastic Development's non-party witnesses—do not reside in Hong Kong but in the Eastern District of Tennessee. The result that Plastic Development pursues is unattainable unless the Court were to saddle these non-party witnesses with the identical inconveniences that Plastic Development's relevant witnesses in Michigan want to shed. Again, this scenario does not favor transfer.

### 3. The Convenience of the Parties

In conducting an analysis of the convenience of the parties, the Court's priority will be to avert "the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain*, 364 U.S. at 26. The Court will consider how access to sources of proof will affect the parties' time and energy, and it will consider special monetary hardships that litigation in the Eastern District of Tennessee, Maxchief's chosen forum,

might cause for Plastic Development. *See B.E. Tech., LLC v. Facebook, Inc.*, 957 F. Supp. 2d 926, 935 (W.D. Tenn. 2013) (stating that "location of the sources of proof and the parties' financial hardships due to litigation in the chosen forum" are the relevant considerations to the convenience of the parties).

i. Access to Evidence

Plastic Development argues that patent infringement actions are primarily an inquiry into the activities of the alleged infringer and that the location of relevant evidence in this case favors transfer because "documents regarding research, design, development, marketing, advertising, and sales, as well as communications" as to the bi-fold tables at issue are present in Michigan. [Def.'s Br. at 8; *see* Guck Decl. ¶ 6]. When a defendant has been accused of patent infringement, the Federal Circuit has been unmistakable about the level of accommodation that courts must give to the location of a defendant's documents in an analysis under § 1404(a): "This court held that '[i]n patent infringement cases, the bulk of relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Nintendo*, 589 F.3d at 1199 (quotation omitted); *see Scooter Store, Inc. v. Spinlife.com, LLC*, No. 2:10-cv-00018, 2010 WL 3489013, at *4 (S.D. Ohio Sept. 1, 2010) (noting that the location of a defendant's documents in a patent infringement action is of critical importance under § 1404(a)).

In response, Maxchief claims that the parties' access to evidence is a factor that "is neutral at best" because documents related to the prosecution of the '644 patent and "the

inventive activity of the inventor" are located in the Eastern District of Tennessee. [Pl.'s Resp. at 8]. Maxchief also maintains that because digital discovery is available to the parties, the location of evidence in the Eastern District of Michigan "has little bearing on the transfer-of-venue analysis." [*Id.* (citing *Rinks v. Hocking*, 1:10-CV-1102, 2011 WL 691242, at *3 (W.D. Mich. Feb. 16, 2011) ("The advent of modern technology, including photocopying, scanning, and electronic document production, has deprived this factor of most of its practical or legal weight.")]. Maxchief, however, supplies the Court with no precedent to support its contention that the location of prosecution-related documents for the '644 patent can serve as a counterweight to nudge the access-to-evidence factor into neutrality—especially in light of the documentary evidence that Plastic Development possesses in Michigan. The Court's research in fact reveals that even when a patent's prosecution-related documents are outside the venue where a defendant's infringement-related documents are located, the access-to-evidence factor continues to favor transfer to the venue containing the defendant's documents. *See Genentech*, 566 F.3d at 1342, 1345–46 (holding that, even though the patent prosecution documents were "housed outside of the [transferee] venue," transfer to the transferee venue was appropriate under the access-to-evidence factor because the defendant's corporate documents were in that venue).

As to Maxchief's argument that technology, for all practical purposes, now renders the access-to-evidence factor superfluous, the Federal Circuit has dispensed with this argument. *Link_A_Media Devices*, 662 F.3d at 1224 (reversing a district court because it dubbed the need to focus on the location the defendant's books and records as "outdated" and "irrelevant" under § 1404(a)); *Genentech*, 566 F. 3d at 1338 (finding clear error in the

23

district court's decision that "[t]he notion that the physical location of some relevant documents should play a substantial role in the venue analysis is somewhat antiquated in the era of electronic storage and transmission" (quoting *Sanofi-Aventis Deutschland GmbH v. Genentech, Inc.*, 607 F. Supp. 2d 769, 777 (E.D. Tex. 2009), *overruled by Genentech*, 566 F.3d 1338 (Fed. Cir. 2009))). The Federal Circuit's holding could not be anymore straightforward: "This court held that . . . the place where the defendant's documents are kept weighs in favor of transfer to that location." *Nintendo*, 589 F.3d at 1199 (quotation omitted). The access-to-evidence factor therefore favors transfer in this case.

### ii. Relative Financial Means of the Parties

Plastic Development does not contend that it lacks the financial means to defend itself against litigation in this district, noting that "[b]oth parties have . . . the financial means to prosecute this litigation." [Def.'s Br. at 10]. Rather, Plastic Development recycles the same argument that it relied on regarding the convenience of the witnesses: a trial in this district "will unnecessarily increase the disruption of [its] business." [*Id.*]. Supporting this contention, Mr. Craig Guck informs the Court that "[t]raveling to Tennessee would place a significant burden upon me, the co-founders, and my employees," namely by interfering with their ability to oversee day-to-day activities at Plastic Development. [Guck Decl. ¶ 14]. Plastic Development proposes that Maxchief is in a better position to bear this-travel-related burden because it is "larger," [Def.'s Br. at 10], and grosses $240,000,000 in revenue while Plastic Development grosses only $40,000,000, [Guck Decl. ¶ 17]. In response, Maxchief highlights the fact that Plastic Development's representatives traveled

to Tennessee in the past to utilize a molding facility and argues that they can surely travel to Tennessee again to appear in this action. [Pl.'s Resp. at 9; *see* Ballentine Decl. ¶ 7 (providing details about Plastic Development's production of rain barrels in Tennessee)].

Although "the relative ability of litigants to bear expenses in any particular forum" is a consideration that the Court must address under § 1404(a), *Leopard Roofing Co. v. Asphalt Roofing Indus. Bureau*, 190 F. Supp. 726, 729–30 (E.D. Tenn. 1960) (citations omitted), the Court is also mindful that "[s]ection 1404(a) was devised to avoid *needless* hardship and . . . to recognize *special* circumstances calling for *special* relief," *Blaski*, 363 U.S. at 351 (Frankfurter, J., dissenting) (emphasis added); *see Inghram*, 2006 WL 306650 at *4 (stating that § 1404(a)'s purpose is to protect litigants from "unnecessary expense" (citing *Van Dusen*, 376 U.S. at 616)). The possibility that Mr. Craig Guck, in addition to other employees from Plastic Development, may have to travel to this district in response to the claims against his company is not a needless or special circumstance that favors transfer. Rather, the need for a party to travel in litigation is fairly commonplace, both in terms of occurrence and expense: "Unless all parties reside in the selected jurisdiction, any litigation will be more expensive for some than for others." *Moses*, 929 F.2d at 1139. While the Court acknowledges that every case involving a motion to transfer is different and requires an "individualized, case-by-case" review of the specific facts, *Stewart Org.*, 487 U.S. at 29 (quotation omitted), Plastic Development does little to show the Court why or how the facts in this case would cause it to endure special hardship.

Under § 1404(a), "[w]hen asserting financial hardships, the parties should state them with specificity." *Medtech Prods. Inc. v. Ranir, LLC*, No. 2:15-cv-02584-JPM-tmp, 2016

WL 67895, at *5 (W.D. Tenn. Jan. 5, 2016); *see Richards v. Upjohn Co.*, 406 F. Supp. 405, 406 (E.D. Mich. 1976) (stating that transfer was unwarranted partly because the defendant pointed to "no specific hardship"). Although Plastic Development tells the Court that its representatives will be unavailable to oversee day-to-day activities within the company if it has to litigate this action in the Eastern District of Tennessee, [Guck Decl. ¶ 14], it does not show with any specificity how financially detrimental their unavailability would be to its business. Without more, the Court cannot act on Plastic Development's contention that it will suffer significant financial distress from litigation in this district. *See B.E. Tech.*, 957 F. Supp. 2d at 937 ("[The plaintiff's] CEO stated that the company will incur additional expenses, but it has not shown with any specificity how detrimental those expenses would be to the company.").

Also, Plastic Development does not assert that it is without the financial resources to shoulder the expense of litigation in this district. [*See* Def.'s Br. at 10]. Instead, it recognizes that it has the means to do so, [*id.*], that it grosses roughly $40,000,000 annually in sales, [Guck Decl. ¶ 17], and that it has even traveled to Tennessee in the past to advance its business-related interests, [Ballentine Decl. ¶7]. These are not facts that equate to monetary hardship. *See Siteworks Sols., LLC v. Oracle Corp.*, No. 08-2130-A/P, 2008 WL 4415075, at *4 (W.D. Tenn. Sept. 22, 2008) (finding an argument regarding financial hardship to be convincing because a party showed that it "has no net worth, very little revenue, no gross profits, no assets, and must borrow from its owners in order to pay the litigation expenses"). To the extent that Plastic Development argues that the difference between the parties' revenues is a relative financial disadvantage that renders it unable to

bear litigation in this district, it fails to cite any case in which a court has considered one multimillion-dollar company to be at a relative financial disadvantage to another multimillion-dollar company. The parties' relative financial means therefore do not favor transfer.

### 4. Availability of Compulsory Process

Without citing to case law or any other legal authority, Plastic Development provides the Court with a terse—and frankly an incomplete—three-sentence argument as to why the availability of compulsory process favors transfer. Plastic Development claims that the Court lacks the power to compel Mr. Villeneuve to attend trial in this district, but it refrains any analysis regarding the Court's ability to compel other relevant witnesses in this case. [Def.'s Br. at 10]. In response, Maxchief does not focus on whether *this* Court has the power to compel the appearance of the relevant witnesses in this case but on whether the district court in the Eastern District of Michigan has the power to compel them—also not citing to a single case. [Pl.'s Resp. at 7–8]. In short, the parties' briefs are neither thorough or helpful, leaving the Court to do the trekking from here.

Federal Rule of Civil Procedure 45(c)(1)(A)–(B) authorizes a district court, through the use of a subpoena, to compel a person to attend a trial, hearing, or deposition within a hundred miles of that person's residence or within the state where that person resides if that person either is a party or would not encounter substantial expense. When considering how Rule 45 operates within an analysis of venue under § 1404(a), the Federal Circuit has homed in on where the relevant witnesses reside, *see Genentech*, 566 F.3d at 1345 (stating

that the availability of compulsory process favored transfer because several witnesses resided in the transferee district while no witnesses resided in the transferor district), but it has also recognized that a defendant who "[m]erely stat[es] that potential witnesses reside beyond a forum's subpoena power does little to assist the court in weighing the . . . necessity of compulsory process." *In re Apple, Inc.*, 581 F. App'x 886, 891 (Fed. Cir. 2014) (quoting *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 719–20 (E.D. Va. 2005)).

In this vein, the Federal Circuit has endorsed the view that "it is the burden of the party seeking transfer to show" that the relevant witnesses "would be unwilling to travel to the transferor district." *Id.* (footnote omitted). Some courts in this circuit have also identified this same showing as part of a movant's burden under § 1404(a). *See Kendle v. Whig Enters., LLC*, No. 2:15-cv-1295, 2016 WL 354876, at *7 (S.D. Ohio Jan. 29, 2016) ("A defendant seeking transfer 'must also show that witnesses (usually third party witnesses, rather than employees of the defendants) are unwilling to attend a trial in th[e] [plaintiff's chosen] forum[.]'" (quotation omitted)); *B.E. Tech.*, 957 F. Supp. 2d at 934 (observing that the "availability of compulsory process for *unwilling* witnesses is . . . an important consideration for the Court" (emphasis added) (citation omitted)); *AMF, Inc. v. Comp. Automation, Inc.*, 532 F. Supp. 1335, 1342 (S.D. Ohio 1982) ("[I]t must be emphasized that there has been no showing that [the non-party witness] would refuse to testify[.]"); *see also In re Barnes & Noble, Inc.*, 743 F.3d 1381, 1383 (Fed. Cir. 2014) (finding no error in the district court's decision to impose a burden on the defendant to

show that third-party witnesses would be unable or unwilling to travel to the plaintiff's choice of forum).

Simply, Plastic Development does nothing more than mention that one of the non-party witnesses in this case, Mr. Villeneuve, resides in the Eastern District of Michigan, beyond the Court's subpoena power. Plastic Development even acknowledges that "[i]t is not clear whether representatives from Design 2000 will be unwilling to attend trial in this matter." [Def.'s Br. at 10]. Failing to establish that Mr. Villeneuve is actually unwilling to testify in the Eastern District of Tennessee, Plastic Development falls well short of meeting its burden. *Apple*, 581 F. App'x at 891. Also, two of the three total non-party witnesses in this case, Mr. Buono and Meco, reside in this district and are subject to compulsory process—a consideration that factors into the Court's analysis and that weighs against transfer. *See Malibu Boats*, 2014 WL 202379 at *5 ("With respect to *non-party witnesses*, the availability of compulsory process . . . is an important consideration for the court" (emphasis added)); *see also Stragent, LLC v. Pioneer Elecs. (USA) Inc.*, No. 6:11cv278 LED-JDL, 2013 WL 8467476, at *5 (E.D. Tex. May 8, 2013) (stating that the availability of compulsory process favors transfer when the majority of non-party witnesses are within the transferee venue). The availability of compulsory process therefore does not warrant transfer.

### 5. Locus of Operative Facts

Plastic Development contends that because it sells the bi-fold tables nationally rather than exclusively in the Eastern District of Tennessee, [*see* Guck Decl. ¶ 8 (stating

that Plastic Development has customers and sells products "in almost every state")], the locus of operative facts giving rise to this lawsuit favors the venue where the design of the bi-fold tables took place—namely the Eastern District of Michigan, [Def.'s Br. at 9–10 (citing *In re Toa Techs., Inc.*, 543 F. App'x 1006, 1010 (Fed. Cir. 2013))]. Maxchief, on the other hand, maintains that the locus of operative facts should be neutral because a portion of the operative facts—namely the '644 patent's design and development—arose in the Eastern District of Tennessee. [Pl.'s Resp. at 11–12 (citing *Malibu Boats*, 2014 WL 202379 at *7)].

Under § 1404(a), "an accused product offered nationwide does not give rise to a substantial interest in any single venue," except when "there are significant connections between a particular venue and the events that gave rise to a suit," in which scenario the locus of operative facts "weigh[s] in that venue's favor." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) (citations and internal citation omitted). The Federal Circuit has recognized that the venue of an accused product's design holds a significant connection to the events forming the operative facts in a patent-infringement lawsuit. *Toa Techs., Inc.*, 543 F. App'x at 1010; *see Hoffmann-La Roche Inc.*, 587 F.3d at 1338. In other words, the interstate sale of an accused product "does not negate the significant interest in trying [a] case in a venue in which [it] was designed." *Toa Techs., Inc.*, 543 F. App'x at 1010. To blunt the case law from the Federal Circuit, Maxchief cites this Court's opinion in *Malibu Boats*, in which the defendant was unsuccessful in persuading the Court that the locus of operative facts was a factor that favored transfer to the venue where the accused product was designed:

30

Defendant . . . argu[es] that, in a patent case, the locus of operative facts is where the alleged infringing device was designed, developed, and produced. The Court concludes, however, that defendant improperly discounts the role plaintiff's documents and other evidence related to the patents-in-suit may ultimately play as to the disposition of various issues that are likely to arise in this case . . . . In addition, the Court notes that several courts have found that the locus of operative facts can include where either the patent-in-suit or the allegedly infringing product was designed[.]

2014 WL 202379 at *7 (citation omitted).

Maxchief, however, overlooks the Court's reasoning in *Malibu Boats*. The Court did not champion an across-the-board devaluation of the significant connection that the location of an accused product's design can have to the events forming the operative facts in a patent infringement lawsuit. Rather, the Court, as is customary under § 1404(a), performed a "highly contextualized and case-specific inquiry" of the facts, *id.* at *4 (citing *Stewart Org.*, 487 U.S. at 29), and in doing so, it rejected the defendant's argument based partly on the substantial weight that it assigned to the forum that the plaintiff—whose principal place of business was in Tennessee—had selected, *id.* at *7. The Court intimated that if the plaintiff were a foreign entity not at home in the Eastern District of Tennessee, its choice of forum might have received less weight and the location of the accused product's design might have carried more weight:

While defendant cites to [a case from the Federal Circuit], for the idea that the location of the infringing device should control, the Court finds th[at] case[] to be inapposite, given that the plaintiff[] in . . . th[at] case[] w[as] [a] foreign corporation[] whose chosen forum[] bore little to no connection to either party.

*Id.* In short, *Malibu Boats* is not a basis for divergence from the Federal Circuit's recognition that the venue of an accused product's design has an important connection to

the events forming the operative facts in a patent infringement action. *See Toa Techs.*, 543

F. App'x at 1010; *Hoffmann-La Roche Inc.*, 587 F.3d at 1338.

The Court also points out that in *Malibu Boats* it did not expressly agree with or

adopt the viewpoint of other district courts that the locus of operative facts can or must

originate in the venue where the patent-in-suit is located. *See EasyWeb Innovations, LLC

v. Facebook, Inc.*, 888 F. Supp. 2d 342, 354 (E.D.N.Y. 2012) (acknowledging that "in

patent cases, the locus of operative facts can include the district where either the patent-in-

suit *or* the allegedly infringing product was designed"). Instead, the Court in *Malibu Boats*

merely "note[d]" that some district courts have identified the venue containing a patent-in-

suit as a locus of operative facts. 2014 WL 202379 at *7. Other district courts appear to

disagree, *see Biometics, LLC v. New Womyn, Inc.*, 112 F. Supp. 2d 869, 876 (E.D. Mo.

2000) ("The patent prosecution records would be easily transported, or could be obtained

from the United States Patent Office, and therefore do not factor into the Court's

analysis."), and Maxchief does not provide the Court with precedent from the Federal

Circuit that resolves the question of how much—if any—lading this Court should place in

the venue containing a patent-in-suit. The Court will therefore hold fast to the Federal

Circuit's instruction that the nationwide sale of an accused product, like the bi-fold tables

in this case, "does not negate the significant interest in trying [a] case in a venue in which

[it] was designed," and it concludes that the locus of operative facts in this case favors

transfer. *Toa Techs., Inc.*, 543 F. App'x at 1010.

### 6. Familiarity with Federal Patent Law

Plastic Development maintains that "[b]oth forums are equally well-equipped to adjudicate complex issues including patent law." [Def.'s Br. at 10]. Plastic Development therefore makes no additional headway toward transfer. *See Malibu*, 2014 WL 202379 at *7 ("Where, as here, the law to be applied is federal patent law, the factor is neutral." (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 333 (E.D.N.Y. 2006))).

### C. Interest of Justice

Under § 1404(a), issues of "systemic integrity and fairness . . . come under the heading of 'the interest of justice.'" *Stewart Org.*, 487 U.S. at 30. "'[T]he interest of justice' that § 1404(a) was designed to prevent" include "unnecessary inconvenience and expense to parties, witnesses, and the public." *Cont'l Grain*, 364 U.S. at 21. Having addressed the lion's share of the parties' arguments concerning the convenience of the witnesses and the parties, the Court will now consider any other concerns from the parties that "may make the litigation easy, less expensive, and expeditious." *Dorsey*, 2009 WL 703384 at *3.

The only new argument that Plastic Development presents to the Court is an unsubstantiated assertion that "it appears as though Maxchief filed suit in this district only to inconvenience [Plastic Development] and unnecessarily increase the disruption of [its] business in Michigan." [Def.'s Br. at 11]. Considering that most of the factors that the Court has reviewed up to this point weigh against transfer, the Court finds no grist in the record to support Plastic Development's contention—and Plastic Development provides it

with none in the way of evidence or case law. *See* E.D. Tenn. L.R. 7.1(b) (requiring the parties' briefs to contain "the factual and legal grounds which justify the ruling sought from the Court"); *see also McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quotation omitted)). The interest of justice therefore does not favor transfer.

### III. CONCLUSION

After weighing the various factors that the courts in this circuit consider on a motion to transfer under § 1404(a), the Court finds that Plastic Development has not shown by a preponderance of the evidence that these factors strongly favor transfer. Although the Court has granted less deference to Maxchief's choice of forum, only two other factors favor transfer: access to evidence and the locus of operative facts. Four of the remaining factors trend away from transfer, including the convenience of the witnesses, which is the most important factor; the relative financial means of the parties; the Court's ability to compel process; and the interest of justice. Even if Plastic Development had managed to draw even by capturing one these factors in its column, it still would have fallen short of attaining a transfer. *See Malibu Boats*, 2014 WL 202379 at *4 (stating that when "the 'balance between the plaintiff's choice of forum and defendant's desired forum is even, the plaintiff's choice of [forum] should prevail'" (quotation omitted)). Plastic Development has therefore failed to satisfy its burden under § 1404(a), and its Motion to Transfer [doc. 17] is **DENIED**. The Court will enter an order consistent with this opinion.

**IT IS SO ORDERED.**

ENTER:

_____
s/ Thomas W. Phillips
United States District Judge